NOT FOR PUBLICATION                                    (Doc. Nos. 22, 36, 37)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                            :
ALFRED PATTERSON and                        :
DEBORAH PATTERSON,                          :      Civil No. 12-4688 (RBK/KMW)
                                            :
              Plaintiffs,                   :      **OPINION**
                                            :
        v.                                  :
                                            :
JOSEPH STRIPPOLI and                        :
BOROUGH OF LINDENWOLD,                      :
                                            :
              Defendants.                    :
_____       :

**KUGLER,** United States District Judge:

        This matter arises from the alleged unlawful discrimination of Alfred Patterson and

Deborah Patterson (collectively "Plaintiffs" or "Pattersons") by Councilman Joseph Strippoli

("Strippoli") and the Borough of Lindenwold ("Borough") (collectively "Defendants").

Plaintiffs assert claims under 42 U.S.C. § 1983 for violations of their Fourteenth Amendment

rights to Equal Protection and Due Process, as well as violations of the New Jersey Constitution.

Currently before the Court is Defendants' motion for summary judgment.  (Doc. No. 22.)  For

the reasons stated herein, Defendants' motion will be granted.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

        Plaintiffs Deborah Patterson and Alfred Patterson are an interracial wife and husband;

Mrs. Patterson is Caucasian, and Mr. Patterson is African-American.  (Defs.' Statement of

_____

[1] When considering a defendant's motion for summary judgment, the Court views the facts underlying the claims in
the light most favorable to the plaintiff.  See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998
F.2d 1224, 1230 (3d Cir. 1993).

Material Facts not in Dispute ("Defs.' SMF") ¶¶ 1-3.)  The couple has resided at 412 East Elm Avenue in Lindenwold, NJ (the "Property") since March 2003.[2]  (Id. ¶ 4.)  Plaintiffs have owned and operated a recycling business since June 2006.  (Id. ¶¶ 7-8.)  The business provides trash removal, clean-up, and yard services to residences and businesses, and also involves removal of scrap metal such as old refrigerators and hot water tanks.  (Id. ¶¶ 12-13.)  Although Plaintiffs deny that the business is operated from the Property, (Pls.' Response to Defs.' SMF ("Pls.' Resp.") ¶ 7), it is undisputed that Plaintiffs use the Property to sort through items they have collected on their truck in the course of business, and to unload and load the truck.  (Defs.' SMF ¶¶ 14-15.)  On at least one occasion, Mr. Patterson has cut metal on his truck while it was parked at the Property.  (Pls.' Resp. ¶ 16.)  Mr. Patterson also occasionally uses the Property to break down materials he acquires into component parts.  (Id. ¶ 17.)  The Property is located in a residential zone.  (Defs.' SMF ¶ 18.)

Defendant Councilman Joseph Strippoli is a neighbor of Plaintiffs, and has a direct view of Plaintiffs' backyard from his house.  (Id. ¶ 6.)  Strippoli has served as a Councilman in the Borough since 1999.  (Id. ¶ 29.)  Lindenwold has six council members, and every year each council member is appointed to serve as the liaison to a particular department.  (Id. ¶¶ 33, 36.)  During the time period relevant to this lawsuit, multiple individuals served as liaison to the code enforcement department, including Councilman Justin Jackson ("Jackson") (2011-2013), Councilman Bill Dougherty ("Dougherty") for the four to five years prior to Jackson, and Councilman Richard Roach ("Roach").  (Id. ¶ 40; Ex. D to Pls.' Br. in Opp'n ("Pls.' Br."),

---

[2] The Property is owned by and titled solely to Deborah Patterson, under her prior married name.  (Defs.' SMF ¶¶ 5, 44.)  For this reason, all code violations to be discussed were issued under the name "Deborah Bellone." (Id. ¶ 44.)

Deposition Testimony of Joseph Strippoli ("Strippoli Dep.") 128:5-17.)  Strippoli never served as liaison to the code enforcement department.  (Defs' SMF ¶ 39.)

Chief of Police Michael McCarthy ("McCarthy") testified that he "thought [the Property] was a well-kept property," and that Plaintiffs' home was "one of the best looking homes on that block." (Ex. H to Pls.' Br., Deposition Testimony of Michael McCarthy ("McCarthy Dep.") 16:12-18:9.)  Former Mayor Frank DeLucca ("DeLucca") testified that he went by the Property once or twice a month and "didn't see anything out of order." (Pls.' Statement of Material Facts in Dispute ("Pls.' Supp. SMF") ¶ 1(B)(v).)  However, Steven Johnson ("Johnson"), another neighbor of the Plaintiffs, testified that "[t]he debris continue (sic) to accumulate…[t]here were workers cutting up scrap material, loading and unloading of trucks." (Defs.' SMF ¶¶ 22-23.) Johnson also testified that there were cardboard boxes, a make-shift table, and vehicle tires on the Property.  (Id. ¶ 25.)  In addition, code enforcement officer John Greer ("Greer") investigated the Property three or four times, (Ex. S to Defs.' Br., Deposition Testimony of John Greer ("Greer Dep.") 17:15-16), whereupon he observed "a trailer parked in the backyard filled with debris, scrap materials, refrigerators, and appliances and debris accumulating in the Pattersons' driveway." (Defs.' SMF ¶ 63.)  Photographs of the Property reveal such items on the Property. (See Exs. J and K to Defs.' Br.)

Since 2004, the Pattersons have been issued code violation notices for their Property. (Defs.' SMF ¶ 44.)  The Complaint alleges that Plaintiffs were cited for violations and/or investigated by police at Strippoli's direction twice in 2004, three times in 2006, twice in 2007,

six times in 2008, twice in 2009,[3] six times in 2011,[4] and five times in 2012.  (Compl. ¶¶ 18-25.)

The parties dispute how many times the Plaintiffs were actually cited for violations relating to

the Property between 2004 and July 26, 2012, when the Complaint was filed.  (See Pls.' Supp.

SMF ¶¶ 2(B)(iii) and (iv) and Defs.' Resp. to Pls.' Supp. SMF ¶¶ 2(B)(iii) and (iv).)  However,

the evidence does indicate the instances in which a code enforcement officer or a police officer

visited the Property for an investigation or to issue a violation notice.  A history of violations

and/or police investigations alleged to have been initiated by Strippoli is as follows:

- July 4, 2004 – Police investigated the Property for an alleged noise violation.  (Ex. BB to Defs.' Br., Lindenwold Police Incident Report Form ("IRF") D0001-02.)
- October 25, 2004 – Citation for an abandoned vehicle on the Property. (Defs.' SMF ¶ 49; Ex. Q to Defs.' Br., Code Enforcement Report D0005.)
- February 2, 2006 – Police investigated the Property for having a pile of wood on the front lawn.  (IRF D0015-16.)
- March 24, 2006 – Citation for an abandoned vehicle and junk storage.  (Ex. BB to Defs.' Br., Violation Notice D0025-26.)
- July 27, 2006 – Citation for violations of the Property Maintenance Code.  (Violation Notice D0028-29.)  Strippoli denied involvement.  (Strippoli Dep. 139:15-24.)
- February 12, 2007 – Citation for illegal parking of a vehicle on public streets. (Violation Notice D0032-33.)  Strippoli denied involvement.  (Strippoli Dep. 140:1-10.)
- March 5, 2007 – Citation for junk storage.  (Violation Notice D0036-37.)  Strippoli denied involvement.  (Strippoli Dep. 140:11-16.)
- January 8, 2008 – Police investigated the Property for an alleged ordinance violation for having a bus parked in front of the home.  (IRF D0075-76.) Strippoli denied involvement.  (Strippoli Dep. 151:10-20.)
- March 9, 2008 – Police investigated the Property for a "neighbor complaint, loud banging."  (IRF D0077-79.)  Strippoli denied involvement.  (Strippoli Dep. 151:21-152:7.)
- April 11, 2008 – Police investigated the Property for a noise complaint.  (IRF D0079-80.)  Strippoli denied involvement.  (Strippoli Dep. 152:8-16.)
- May 20, 2008 – Police investigated a claim for a possible threat or harassment against Strippoli by Mr. Patterson, where Mr. Patterson had allegedly driven past Strippoli's residence and acted as if he was pointing a gun at Strippoli.  (IRF D0080-84.)  Mr.

---

[3] The record only includes evidence of one incident in 2009.  (See Ex. B to Defs.' Br., Deposition Testimony of Deborah Patterson-2 ("Mrs. Patterson Dep-2") 26:21-27:6.)

[4] Plaintiffs have provided no evidence of an incident on April 15, 2011, which was an alleged noise complaint. (Compl. ¶ 24; Ex. C to Defs.' Br., Deposition Testimony of Alfred Patterson ("Mr. Patterson Dep.") 144:10-17; Mrs. Patterson Dep-2 27:7-28:3.)

Patterson denies that such action took place.  (Id. D0083.)  Strippoli did not wish for any further police investigation into the matter.  (Id. D0084.)

- October 9, 2008 and December 2, 2008 – Mrs. Patterson claims the police were sent to investigate the Property, but no one was home.  (Ex. B. to Defs.' Br., Mrs. Patterson Dep-2 13:14-14:18.)

- November 17, 2009 – Police investigated the Property for a noise complaint made by neighbor Heather Cooper for "a male cutting metal and making too much noise." (IRF D0116-17.)

- February 28, 2011 – Inspection report issued for having an "[u]nregistered trailer in yard, along with junk and debris."  (Ex. M to Pls.' Br., Inspection Report D0124.)

- May 13, 2011 – Police investigated the Property based on a report from an anonymous female caller that there was a tractor parked in front of the Property.  (IRF D0127-28.)  Mr. Patterson testified that Officer Davis told him that "you know who called," referring to Strippoli.  (Mr. Patterson Dep-2 144:21-24.)  Strippoli denied involvement.  (Strippoli Dep. 163:24-164:9.)

- May 14, 2011 – Police investigated the Property based on a report from an anonymous female caller that there was a truck parked on the street in front of the Property with no rear tag.  (IRF D0129-30.)  Mrs. Patterson testified that the police officer told her it was Strippoli who called.  (Mrs. Patterson Dep-2 29:15-22.)  Strippoli denies involvement.  (Strippoli Dep. 164:10-18.)

- June 14, 2011 – Inspection report issued for "storage of junk in trailer." (Ex. BB to Defs.' Br., Inspection Report D0134.)

- December 13, 2011[5] – Inspection report issued for "basketball hoop at curb." (Ex. M to Pls.' Br., Inspection Report D0163.)

- February 15, 2012 – Inspection report issued for accumulation of rubbish and garbage.  (Ex. BB to Defs.' Br., Inspection Report D0164.)  Code enforcement officer Robert Fort testified that he went to the Property after Strippoli brought its condition to his attention.  (Ex. A to Pls.' Br., Deposition Testimony of Roger Fort ("Fort Dep.") 32:5-14.)

- March 28, 2012 – Code enforcement officers visited the Property and gave the Pattersons a copy of a borough ordinance. (Mr. Patterson Dep. 153:17-154:9.)

- April 9, 2012 – Inspection report issued for sports equipment on streets, sanitation, and accumulation of rubbish and garbage.  (Ex. BB to Defs.' Br., Inspection Report D0168.)  Councilman Jackson made this complaint.  (Defs.' SMF ¶ 96.)

- April 15, 2012 – Police investigated the Property for a noise complaint, reported by Richard Roach.  (IRF D0169-70.)  Strippoli denies involvement.  (Strippoli Dep. 177:3-178:5.)

- April 24, 2012 – Inspection report issued ordering the Pattersons to "remove all materials, debris, trash, rubbish, ect. (sic) stored on the property & on any truck or trailer not allowed to be stored on the property or on any truck or trailer."  (Ex. BB to

---

[5] The "Date of Notice" on the inspection report is blank, but the report has an "Abate by" date of 12/13/2011.  (Ex. M to Pls.' Br., Inspection Report D0163.)

Defs.' Br., Inspection Report D0173.)  Strippoli denied involvement. (Strippoli Dep. 178:6-16.)

The Pattersons testified that they were told on various instances when an enforcement officer or police officer came out to their Property that the officer had come at the request of Strippoli.  (See Mrs. Patterson Dep-2., 13:2-5; 13:9-12; 15:9-14; 29:19-21; 30:12-25; see also Mr. Patterson Dep. 119:1-8; 128:3-18.)

Councilman Jackson testified that he was never asked by Strippoli to send a code enforcement officer to the Property.  (Ex. I to Defs.' Br., Deposition Testimony of Justin Jackson ("Jackson Dep.") 31:3-6.)  Strippoli, however, testified that he had reported code violations by the Plaintiffs to Jackson "half a dozen times." (Strippoli Dep. 130:19-20.)  Strippoli also admitted that he spoke to Councilman Roach "three or four times" and Councilman Dougherty "six or seven times" about the Pattersons during their respective times as code enforcement liaisons.  (Id. 129:4-24.)  Councilman Kenneth Balmer ("Balmer") testified that, although he was not a code enforcement liaison, Strippoli called him more than once to initiate complaints against the Plaintiffs.  (Ex. F to Pls.' Br., Deposition of Kenneth Balmer ("Balmer Dep."), 9:1-16.)

Roger Fort was a code enforcement officer from January 2012 to January 2013.  (Defs.' SMF ¶ 75.)  On March 6, 2012, Strippoli asked Fort to come to his home to show him Plaintiffs' Property.  (Id. ¶ 83.)  Strippoli told Fort that "if [he] didn't take care of the violations on the Patterson property that [he] could end up like the other two previous code enforcement officers who no longer work there." (Fort Dep. 44:6-9.)  Despite Strippoli's remarks, Fort claims that his decision to issue citations to the Pattersons were solely the product of his own judgment.  (Id. 45:16-19.)

Chief McCarthy testified that neither the Mayor nor any council members ever instructed any member of the police department to bring charges against the Plaintiffs.  (McCarthy Dep.

44:15-45:15.)  However, on at least one occasion, Strippoli asked McCarthy to have police investigate Mr. Patterson for issues relating to his truck and his driver's license.  (Id. 51:7-55:15.)  McCarthy also testified that Strippoli's "ongoing" complaints to the police were "getting to be a pain in their neck."  (Id. 39:15-18.)  DeLucca testified that, while he was Mayor of Lindenwold, Strippoli called code enforcement officers and the police regarding the Pattersons, and that Strippoli "directed them as councilman" to investigate the Property.  (Ex. G to Pls.' Br., Deposition Testimony of Mayor Frank DeLucca ("DeLucca Dep.") 26:11-28:11.)  In addition, Strippoli signed a complaint with the police department against the Pattersons for the condition of their Property, for storing junk and operating a business, which required an officer to take a report.  (Defs.' SMF ¶ 103.)  The Pattersons also filed a complaint against Strippoli with the police.  (Id. ¶ 104.)

Greer testified that from 2009 to 2011, he undertook "hundreds" of inspections regarding alleged code violations in the Borough, with the "overwhelming majority" resulting in a notice of a violation.  (Greer Dep. 48:6-14.)  In addition, a record of notices of violations issued to Borough residents from 2009-2013 that are similar in nature to those issued to Plaintiffs reveals several hundreds of violations that were issued.  (Ex. W to Defs.' Br, List of Violations.)  Such violations include "accumulation of rubbish," "sanitation," certain motor vehicle violations, "sports equipment on streets," "storage," and "junk shop."  (Id.)  Mrs. Patterson testified that she had neighbors with unregistered vehicles on their properties for years that never received violations, and that "[n]o one in that area, in the two-to-three block radius, got any violation for a car unregistered, got a basketball violation, got anything for trash." (Ex. A to Defs.' Br., Deposition Testimony of Deborah Patterson-1 ("Mrs. Patterson Dep-1") 76:7-23.)  The Pattersons also name specific neighbors who were not cited for basketball hoop violations.

(Compl. ¶ 30; Ex. N to Pls.' Br., Neighbors' Statements.)  After filing the Complaint, all of the neighbors listed were cited for basketball hoop violations.  (Pls.' Supp. SMF ¶ 4(B)(ix).)

Plaintiffs claim that Strippoli discriminated against them due to their status as an interracial couple.  In 2008, Strippoli said to Mrs. Patterson "What are you doing married to a black man like that?" (Mrs. Patterson Dep-1 24:1-2.)  McCarthy testified that he thought Strippoli's treatment of the Pattersons was based on race, (McCarthy Dep. 21:17-20), and that DeLucca had told him that Strippoli's treatment of the Pattersons was based on them being an interracial couple.  (Id. 21:25-22:9.)  DeLucca testified that Strippoli "said to me on more than one occasion how would you like that black SOB living next door to you?" (Defs.' SMF ¶ 148.) He also testified that Strippoli had referenced Mrs. Patterson as a "white SOB" or a "white bitch." (DeLucca Dep. 66:18-21.)  Strippoli also admitted that he has used the expression CPT, meaning "Colored People Time." (Pls.' Supp. SMF ¶ 3(B)(iv).)  Councilman Balmer heard Strippoli say "I don't know why she married a black guy like that." (Defs.' SMF ¶ 161.)  Balmer testified that Strippoli was abusing his position as councilman in some respects, (Balmer Dep. 36:1-5); DeLucca likewise testified that Strippoli was "using his position as a councilman" to fight with the Pattersons.  (DeLucca Dep. 19:23-25.)

Plaintiffs filed the Complaint on July 26, 2012.  (Doc. No. 1.)  Against Defendant Strippoli, Plaintiffs assert claims under 42 U.S.C. § 1983 for violations of the Equal Protection and Due Process Clauses, and for violations of Article I, Paragraphs 5 and 20 of the New Jersey

Constitution.  (Compl., Counts I-III.)  Plaintiffs also assert a claim against the Borough of

Lindenwold pursuant to § 1983.  (Compl., Count IV).

## II.     LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine dispute

of material fact exists only if the evidence is such that a reasonable jury could find for the non-

moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court

weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir.

1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the

absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district

court – that there is an absence of evidence to support the nonmoving party's case."  Celotex,

477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving

party to "do more than simply show that there is some metaphysical doubt as to the material

facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to

survive summary judgment, the nonmoving party must "make a showing sufficient to establish

the existence of [every] element essential to that party's case, and on which that party will bear

the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing

summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify

those facts of record which would contradict the facts identified by the movant.'" <u>Corliss v. Varner</u>, 247 F. App'x. 353, 354 (3d Cir. Sept. 17, 2007) (quoting <u>Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.</u>, 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION & ANALYSIS

### A.  Section 1983

Plaintiffs invoke § 1983 to bring challenges under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Specifically, Plaintiffs allege racial discrimination and "class of one" discrimination due to Strippoli's alleged selective enforcement of Borough ordinances, and a deprivation of constitutionally protected interests under the Due Process Clause. (Compl., Counts I-III). To recover under § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). "Acting under color of state law requires that the defendant . . . have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" <u>Id.</u> (citations omitted). In the instant case, the parties do not dispute that Councilman Strippoli was acting under color of state law. <u>See</u> <u>Teleprompter of Erie, Inc. v. City of Erie</u>, 567 F. Supp. 1277, 1294 (W.D. Pa 1983) ("The Civil Rights Act does not exclude from its purview the wrongful acts of an official for which the

official has no authority.")  Plaintiffs also allege that the Borough is liable pursuant to § 1983

and Monell v. Department of Social Services of New York, 436 U.S. 658 (1978).  Under Monell,

a municipality cannot be held liable for the unconstitutional acts of its employees on a theory of

respondeat superior; rather, a plaintiff must demonstrate that the violation of rights was caused

by the municipality's policy or custom.  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d

Cir. 2014).

### 1.  Statute of Limitations

The Court first addresses whether the statute of limitations bars certain claims.  Section

1983 contains no specific statute of limitations.  Smith v. City of Pittsburgh, 764 F.2d 188, 192

(3d Cir. 1985).  Thus, courts should look to the state law statute of limitations for the particular

type of claim.  Id.  In New Jersey, § 1983 actions are subject to a two-year personal injury statute

of limitations.  O'Connor v. City of Newark, 440 F.3d 125, 126-27 (3d Cir. 2006).  While the

statute of limitations is governed by state law, the date of accrual is a question of federal law.  It

is well-settled that "accrual occurs when the plaintiff has a complete and present cause of action,

that is, when the plaintiff can file suit and obtain relief."  Wallace v. Kato, 549 U.S. 384, 388

(2007) (internal quotations and citations omitted).

When a defendant's conduct is part of a continuing practice, the "continuing violation

doctrine" may allow the court to grant relief to earlier related acts that would otherwise be time

barred.  Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013).  Although the

continuing violation doctrine is most frequently used in employment discrimination cases, "this

has not precluded the application of the doctrine to other contexts." Cowell v. Palmer Twp., 263

F.3d 286, 292 (3d Cir. 2001).  A plaintiff must show that at least one act occurred during the

filing period, and that the conduct is "more than the occurrence of isolated or sporadic acts of

intentional discrimination." West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995) (quotations omitted). The Third Circuit has recently clarified the test for distinguishing between isolated acts of discrimination and an ongoing pattern of discrimination that would establish a continuing violation. Mandel, 706 F.3d at 166. After the Supreme Court decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), a court need only examine the subject matter and frequency of defendant's conduct. Id. Subject matter refers to "whether the violations constitute the same type of discrimination," and frequency refers to "whether the acts are recurring or more in the nature of isolated incidents." West, 45 F.3d at 755 n.9. A court need no longer consider the degree of permanence such that the act would trigger plaintiff's duty to assert his rights.[6]

Plaintiffs' Complaint alleges claims for damages for investigations and code violation notices that begin as early as 2004, (Compl. ¶ 18), yet the Complaint was not filed until July 26, 2012. (Doc. No. 1.) Defendants move for summary judgment on all claims arising prior to July 26, 2010, pursuant to the two-year statute of limitations. (Defs.' Br. 10). To begin, the parties do not disagree, and the Court finds, that the subject matter of defendant's conduct constitutes the same type of alleged discrimination. The issue becomes whether the frequency of the alleged conduct transformed Defendants' actions from isolated incidents into a pattern of discrimination. Defendants contend that several gaps in the alleged discriminatory conduct from 2004 to 2011, ranging from a seven month gap to a fifteen month gap, constitute a "definite break" that defeats

---

[6] The Court notes that other District Courts have continued to consider the degree of permanence factor even after Mandel. See, e.g., Davis v. McCarthy, 2013 U.S. Dist. LEXIS 56347 (D.N.J. Apr. 19, 2013) and Williams v. City of Trenton, 2013 U.S. Dist. LEXIS 84401 (D.N.J. June 17, 2013). However, the Third Circuit was clear in Mandel that "[f]ollowing Morgan…permanency is not required to establish a continuing violation." Mandel, 706 F.3d at 166. Although Morgan was a Title VII case, "[t]he principles at work in Morgan apply with equal force to § 1983 claims." O'Connor, 440 F.3d at 128.

any continuing violation.  (Defs.' Br. 11).[7]  This Court agrees.  Although the cases that

Defendants rely on deal with longer gaps in activity of three and four years, "courts have never

set a specific standard for determining how close together the acts must occur to amount to a

continuing violation." Cowell, 263 F.3d at 295.[8]  Moreover, each incident of race-based

discrimination alleged is independently actionable if Defendants' conduct were truly motivated

by Plaintiffs' races.  See Major Tours, Inc. v. Colorel, 799 F. Supp. 2d 376, 389 (D.N.J. 2011)

("[The continuing violation doctrine] does not apply to a racial profiling claim involving many

discrete acts of racial profiling and selective enforcement.  Unlike a hostile work environment in

which not every inappropriate comment or glance is actionable in itself, racial profiling or

selective enforcement accrues at the time of the discriminatory enforcement action.")  Therefore,

any allegations concerning events prior to July 26, 2010 are dismissed as untimely.

### 2.  Equal Protection

The Court next addresses Plaintiffs claims in Counts I and II for racial discrimination and

class of one discrimination in violation of the Equal Protection Clause of the Fourteenth

Amendment.

### a.  Racial Discrimination

Count I of Plaintiffs' Complaint alleges racial discrimination by Defendant Strippoli.[9]

The Equal Protection Clause of the Fourteenth Amendment protects similarly situated

---

[7] Defendants note a 17-month gap, but after reviewing the record, the Court finds the longest complained of gap is actually 15 months.

[8] Plaintiffs argue that Defendants' frequency analysis only points to actual code violations, and "ignores the number of times code enforcement officials or the police went to the Plaintiffs' property and did not find a code violation." (Pls.' Br. 5-6.)  Reviewing Defendants' brief, this is simply incorrect. (Defs.' Br. 10-11 (citing code enforcement and police "visits").)  Moreover, Plaintiffs have not directed the Court's attention to any evidence of other visits or alleged "harassment" by Borough officials during these identified gap periods.  (Pls.' Br. 5-6.)

[9] Count I also alleges a violation of the New Jersey Constitution. See infra Section B.

individuals from unequal treatment under the law.  U.S. Const. amend. XIV, § 1; see City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Kuhar v. Greensburg-Salem Sch. Dist., 616 F.2d 676, 677 (3d Cir. 1980).  "The central purpose of the Equal Protection Clause is the prevention of official conduct discriminating on the basis of race," Washington v. Davis, 426 U.S. 229, 239 (1976), or any other suspect classification.  To make an equal protection claim, a plaintiff must prove that the defendant's actions (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose.  Bradley v. United States, 299 F.3d 197, 205-06 (3d Cir. 2002).  Proving a discriminatory effect requires a showing that the plaintiff was a member of a protected class, and that he was treated differently from those similarly situated who were not in that protected class.  Id.  More specifically, the test for a selective enforcement claim requires "(1) that [the plaintiff] was treated differently from other similarly situated [entities], and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor… or to prevent the exercise of a fundamental right." PG Pub. Co. v. Aichele, 705 F.3d 91, 115 (3d Cir. 2013).

Defendants contend that Plaintiffs cannot show that Defendants' treatment of Plaintiffs was motivated by a discriminatory purpose, or that they were treated differently from similarly situated households, and thus this Court should grant summary judgment in their favor.  First, the parties agree that Plaintiffs are an interracial couple, and thus members of a protected class.  Next, Plaintiffs claim that they were treated differently than other similarly situated non-interracial couples in that their Property was unfairly selected for enforcement of code violations based on their races.  "Persons are similarly situated under the Equal Protection Clause when

they are alike 'in all relevant aspects.'" <u>Startzell v. City of Philadelphia</u>, 533 F.3d 183, 203 (3d Cir. 2008) (citing <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992)).

  To support their claim that they were treated differently, Plaintiffs only point to evidence that five non-interracial households were not cited for basketball hoop violations, while the Pattersons were.  Those neighbors have since been cited.  As to Mrs. Patterson's testimony that she has neighbors that were not cited for violations similar to those for which Plaintiffs were cited, these allegations are unspecific and conclusory.  Plaintiffs have not specified which neighbors should have been cited.  They have not alerted the Court to any evidence that these other households in fact deserved the attention of police and/or code enforcement officers for the condition of their properties.  More importantly, Plaintiffs have not pointed to any evidence that these households were similarly situated to the Plaintiffs in terms of the use of their properties.  Although it is disputed as to whether Plaintiffs actually operated their business from the Property, it is clear from the evidence that Plaintiffs, at least occasionally, used the Property for activities related to their recycling business, and that when code enforcement officers went to their property, they issued notices of violations that the Plaintiffs were instructed to abate.  Even if Strippoli was the genesis of all the investigations and/or violations issued against Plaintiffs, there is no evidence that Strippoli had other neighbors besides the Pattersons whose properties he suspected to be in violation of an ordinance, but about which he did not complain.

  Defendants, on the other hand, point to evidence that code enforcement officers undertook hundreds of inspections for alleged violations of the property maintenance code in the Borough, with the majority resulting in violation notices.  Furthermore, hundreds of similar violation notices were issued to other properties in the Borough during the relevant time period.  Because Plaintiffs have not offered sufficient evidence that they were treated differently than

similarly situated individuals, they have failed to establish the existence of the essential element of discriminatory effect, to which they bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "A court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." Simmermon v. Gabbianelli, 932 F. Supp. 2d 626, 633 (D.N.J. 2003) (internal quotations omitted).  Therefore, this Court need not address whether Defendants were motivated by a discriminatory purpose.  The Court grants summary judgment in favor of Defendants as to Count I for racial discrimination in violation of the Fourteenth Amendment's Equal Protection Clause.

### b.  Class of One Discrimination

Count II of Plaintiffs' Complaint alleges class of one discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.[10]  A plaintiff may recover under this theory where he proves that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006); see also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  There is no rational basis for the difference in treatment when the defendant's conduct is "irrational and wholly arbitrary." Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d Cir. 2004).

Considering the record in the light most favorable to Plaintiffs, there is insufficient evidence to allow a reasonable jury to reach a verdict in their favor.  Defendants identify hundreds of violation notices issued to other property owners for violations similar in nature to the Patterson's violations.  Furthermore, Defendants point to photographs depicting the condition of the Property.  The evidence shows that Plaintiffs engaged in activities related to their

---

[10] Count II also alleges a violation of the New Jersey Constitution.  See infra section B.

recycling business on their Property.  But besides the basketball hoop allegations, the record

evidence contains nothing more than vague and conclusory assertions about other Borough

residents and the conditions of their property.  Moreover, Strippoli has a direct view of Plaintiff's

property from his own property; there is no evidence that he has the same view of other alleged

violators' properties.  Thus, as discussed supra, Plaintiffs have failed to establish that they were

treated differently than those similarly situated.

Even if Strippoli were the cause of the complaints against Plaintiffs, and even if there was

a genuine issue of material fact as to whether Defendants treated Plaintiffs differently than others

similarly situated, Plaintiffs fail to provide any evidence explaining how the condition of their

property and the status of Strippoli as their direct neighbor do not amount to a rational basis for

the alleged difference in treatment.  See Sheddy Family Trust ex rel. Sheddy v. Piatt Twp., 404

Fed. App'x. 629, 631 (3d Cir. 2010) (affirming grant of summary judgment to defendants for a

claim of class of one discrimination where plaintiffs did not adduce evidence of a rational basis

for a difference in treatment with respect to the enforcement of an ordinance prohibiting storage

of junk vehicles on the property without a permit).  Therefore, Plaintiffs have failed to show that

there is a genuine issue of material fact concerning the existence of a rational basis for their

treatment.  Because Plaintiffs have failed to establish facts necessary to support a claim based on

a class of one theory, this Court grants summary judgment in favor of Defendants as to Count II

for class of one discrimination in violation of the Fourteenth Amendment's Equal Protection Clause.

### 3. Due Process

Count III of Plaintiffs' Complaint alleges a violation of the Due Process Clause of the Fourteenth Amendment.[11] Plaintiffs allege that Strippoli interfered with their constitutional liberty interest in marriage and their property interest in their home.  (Compl. ¶ 65.)  Plaintiffs also claim that Strippoli's actions were "so arbitrary and capricious that they have substantially interfered with Plaintiffs' right of liberty/privacy and the use and enjoyment of their property," amounting to a taking of their property under the Due Process Clause.  (Id. ¶¶ 68-69.)

"'The core of the concept [of due process is] protection against arbitrary action' and 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)).  To establish a substantive due process claim, a plaintiff must prove that the interest is protected by the substantive due process clause, and that the defendant's deprivation of that interest shocks the conscience.  Id.  "[M]erely alleging an improper motive is insufficient [to meet the conscience-shocking standard], even where the motive is unrelated to the merits of the underlying decision." Id. at 220.

In the instant case, Plaintiffs have not produced any evidence that gives rise to a substantive due process claim.  The evidence shows only that Borough officials visited the Property to investigate or issue notices of violations.  The alleged selective enforcement of Borough ordinances does not "shock the conscience."  See Eichenlaub, 385 F.3d at 286 (finding alleged conduct did not "shock the conscience" where zoning officials applied certain

---

[11] Count III also alleges a violation of the New Jersey Constitution.  See infra Section B.

requirements to plaintiff's property and not to others, pursued "unnecessary inspection and enforcement actions," delayed some permits and approvals, and increased tax assessments);[12] see also Highway Materials, Inc. v. Whitemarsh Twp., 386 Fed. App'x. 251, 258 (3d Cir. 2010) (holding that defendants' actions did not "shock the conscience" where they allegedly improperly applied township ordinances and treated plaintiffs differently from nearby property owners).

Moreover, while Plaintiffs' interests in marriage and property are protected by the Due Process Clause (see Nicholas v. Pennsylvania State Univ., 277 F.3d 133, 141 (3d Cir. 2000) ("[land] ownership is a property interest worthy of substantive due process protection") (quoting DeBlasio v. Zoning Bd. of Adjustment for the Twp. of West Amwell, 53 F.3d 592, 600 (3d Cir. 1995)) and Zablocki v. Redhail, 434 U.S. 374, 395 (1978) (finding marriage a protected liberty interest under substantive due process)), even if there were a genuine issue of material fact as to whether Defendants' actions met the conscience-shocking standard, it is the government's deprivation of these interests that must shock the conscience.  Here, Plaintiffs do not point to any evidence beyond the pleadings that they were not able to use and enjoy their property.  Likewise, they do not alert the court to any evidence that Strippoli's alleged actions interfered with their

---

[12] The Court notes that in Eichenlaub, unlike this case, there was no allegation of any bias toward a particular race or ethnic group.  See also MARJAC, LLC v. Trenk, 380 Fed. App'x. 142, 147 (3d Cir. 2010) (denying summary judgment where plaintiff produced evidence that township's selective enforcement of zoning laws was motivated by ethnic bias).  However, this Court nonetheless finds Eichenlaub informative because "every appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal authority, but 'it is not enough simply to give these . . . claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983.'" Eichenlaub, 385 F.3d at 286 (quoting United Artists Theater Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 402 (3d Cir. 2003).

right to marriage.  See Zablocki v. Redhail, 434 U.S. 374 (1978).  Consequently, the Court grants

summary judgment in favor of Defendants as to the Due Process claim in Count III.[13]

### 4.  Borough of Lindenwold

Count IV of Plaintiffs' Complaint alleges that the Borough maintained a policy, custom,

or practice of "condoning and/or the acquiescence in the abuse of power" by Strippoli that

resulted in federal constitutional deprivations.[14]  As a result, Plaintiffs seek relief from the

Borough pursuant to § 1983.  Monell v. Dept. of Social Servs. of New York, 436 U.S. 658

(1978).  However, a Monell claim requires a deprivation of federal constitutional rights.  City of

Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (finding no municipal liability based on the

actions of one of its police officers where jury concluded that the individual police officer

inflicted no constitutional harm); see also Grazier ex rel. White v. City of Philadelphia, 328 F.3d

120, 123-24 & n5 (3d Cir. 2003) (distinguishing its prior holding in Fagan v. City of Vineland,

---

[13] To the extent that Plaintiffs may be attempting to claim a violation of Procedural Due Process, this Court notes that the pleadings on their face do not support such a claim, as there is no allegation that Plaintiffs were ever denied the opportunity to seek redress for the notices of violation issued to them by the code enforcement officers.  Thus the Court does not address Procedural Due Process.

To the extent that Plaintiffs may be alleging a violation of the Fifth Amendment's Takings Clause, the Court finds summary judgment appropriate.  The Due Process Clause incorporates the Fifth Amendment's Takings Clause, making it binding on the states.  Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001).  A "taking" of private property occurs either by physical invasion or by regulation.  Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014-16 (1992).  Where a regulation denies all economically beneficial use of land, a taking has occurred.  Palazzolo, 533 U.S. at 617.  Furthermore, "[w]here a regulation places limitations on land that fall short of eliminating all economically beneficial use," to determine whether a taking has taken place, courts must consider "the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." Id.

Defendants never physically occupied the Property, and the record is simply void of any evidence that Defendants' alleged selective enforcement of Borough ordinances deprived Plaintiffs of any, let alone all, economically viable use of their land.  The Property is located in a residential zone.  Plaintiffs contend that they are not operating their recycling business from the Property.  Since Plaintiffs continue to be able to use their land for residential purposes, there is no evidence of a regulatory taking whatsoever, and thus there is no genuine issue of material fact in dispute.

[14] The Complaint also appears to allege that this policy, custom, or practice violates the New Jersey Constitution and state laws.  The Court notes that a Monell claim pursuant to § 1983 is only applicable to federal claims, and thus the Court will not address any potential violation of the state constitution or laws by the Borough.

22 F.3d 1283 (3d Cir. 1994), thereby clarifying that municipal liability requires constitutional

harm unless the municipality's actions are independently alleged as a violation, and confining

Fagan to substantive due process claims resulting from a police pursuit).  Because this Court has

come to the conclusion that Defendant Strippoli has met his burden for summary judgment as to

the federal claims for Equal Protection and Due Process, supra, there can be no Monell claim for

liability pursuant to § 1983.  This Court therefore grants summary judgment in favor of the

Borough as to Count IV.

### B.  New Jersey Constitutional Claims

Plaintiffs allege a violation of Article I, Paragraph 5 and Article I, Paragraph 20 of the

New Jersey Constitution.  (Compl. Counts I-III.)  It is generally established in the Third Circuit

that a court may decline supplemental jurisdiction when federal claims are dismissed by way of

summary judgment.  Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir. 1976) ("if it

appears that the federal claim . . . could be disposed of on a motion for summary judgment under

F.R. Civ. P. 56, then the court should ordinarily refrain from exercising jurisdiction in the

absence of extraordinary circumstances"); Simmerman v. Corino, 804 F. Supp. 644, 658 (D.N.J.

1992) ("[W]here a party's federal claims are disposed of on a summary judgment motion, the

court should generally refrain from exercising supplemental jurisdiction over the remaining state

claims."), aff'd, 16 F.3d 405 (3d Cir. 1993).  Because this Court grants summary judgment in

favor of Defendants on all federal claims, the Court declines to exercise supplemental

jurisdiction over all remaining state law claims and is therefore dismissing them.

**IV.     Conclusion**

      For the reasons stated above, the Court will grant Defendants' motion for summary

judgment.  An appropriate order shall issue today.

Dated:  10/29/2014                                         s/ Robert B. Kugler
                                           ROBERT B. KUGLER
                                           United States District Judge